**DOUGLASS BROS., INC.**

v.

**The UNITED STATES.**

**No. 355–58.**

United States Court of Claims.

July 12, 1963.

W. C. Peticolas, El Paso, Tex., for plaintiff. Peticolas, Luscombe and Stephens, El Paso, Tex., were on the briefs.

Katherine H. Johnson, Alexandria, Va., with whom was Asst. Atty. Gen. John W. Douglas, for defendant.

Before JONES, Chief Judge, and LARAMORE, DURFEE and DAVIS, Judges.

DURFEE, Judge.*

Douglass Bros., Inc. brings this action to recover the sum of $32,247.82, the

---

* Trial Commissioner Mastin G. White at the direction of the court, prepared an opinion and recommended conclusions of

law in this case, which was of substantial assistance.

balance of payment due under a contract with defendant. Plaintiff completed the work called for by the contract, but because of plaintiff's subcontractor's negligence, fire destroyed part of defendant's property. Defendant withholds the stated amount from plaintiff to compensate itself for the loss.

Douglass contracted to install new transformers and secondary lines carrying electricity at the Holloman Air Force Base in New Mexico. The actual work was performed by the L. G. Simon Electric Company. In the course of installing the new equipment, Simon's employees misconnected two wires. A result of this negligence was a fire in two buildings Nos. 295 and 297 on the Air Force Base. The work called for by the contract was completed and plaintiff was paid all but the $32,247.82 sued for in this proceeding. The Air Force withheld this amount, estimating this to be the amount of damage caused to the buildings, on the basis of paragraph 31 of the General Provisions of the Contract involved. This provision states in part:

" * * * the Contractor shall be responsible for all loss or destruction of or damage to property that occurs as a result of his [sic] fault or negligence in connection with the prosecution of the work * * *."

After the fire in buildings 295 and 297, an Air Force Board conducted an investigation as to its cause and the extent of the destruction. This *ex parte* investigation determined that the cause of the fire was carelessness on the part of the L. G. Simon Electric Company's personnel. Neither plaintiff nor Simon Company was afforded an opportunity to be represented at the board's proceedings, or to present evidence to the board. On the basis of this investigation, the contracting officer presented Douglass with the claim for damages. Upon plaintiff's failure to pay the claim and the subsequent withholding of payment to plaintiff, Douglass filed its claim for $32,247.-82 with the General Accounting Office. The Comptroller General disallowed the claim. The Armed Services Board of Contract Appeals eventually rendered an opinion on plaintiff's claim, dismissing it on the ground that the ASBCA lacked jurisdiction because the claim had been submitted to, and denied by the Comptroller General.

It is admitted that Simon's employees were negligent, that this negligence is imputed to plaintiff, and that plaintiff is otherwise liable for negligent destruction of defendant's property under paragraph 31 of the contract. The issues between the parties concern defendant's negligence. Was defendant careless in the manner in which it grounded the wires in buildings 295 and 297; was this a substantial factor contributing to the property destruction; does this alter plaintiff's responsibility under paragraph 31, or render the paragraph inoperative?

Plaintiff has completed the work called for by the contract, but defendant has failed to respond with the agreed-upon consideration. Having thus caused a breach of contract, defendant is brought to court to account for its failure to pay. The defense is plaintiff's negligence and its liability therefor under paragraph 31. Without question, plaintiff may plead and prove that defendant's own negligence caused all or part of the damage in order to overcome this defense. The defense and counter-defense of negligence, however, does not make this suit for the contract price a tort action. It remains a suit for breach of contract and involves the interpretation to be given paragraph 31 of the agreement. This is not a case sounding in tort; we have no jurisdiction over such controversies.

■ Paragraph 31 states that the contractor shall be responsible for defendant's loss that occurs as a result of the contractor's "fault or negligence." This must mean the *sole* fault of the contractor or its agents or employees. It does not include the fault of third parties, and it cannot include the fault of defendant's own agents or employees. The contract would have to state in clear and unequivocal terms, the unusual provision that would allow defendant to so pass on the liability for its own negligence. If

defendant has negligently caused damage to its property, it must bear this loss itself; it may not withhold from plaintiff any part of the contract price to compensate for the loss.

 In the case at bar, we must first determine, under a contract provision, what damage plaintiff is responsible for, and hold it liable. If defendant's carelessness was operative at the same moment and it added to and extended the damage done, we must make the effort to separate this additional destruction. Plaintiff cannot be held for that also. Under the terms of paragraph 31, plaintiff is not absolved from its wrongdoing because of defendant's concurrent fault, yet defendant cannot hold Douglass Bros., Inc. liable for the entire loss to which its own carelessness contributed.

 The fire broke out because of the misconnection between the secondary line and service drops for the lighting services in buildings 295 and 297 made by the L. G. Simon Company. The misconnection caused an overloading of current on the wires leading into the buildings and on to the light fixtures. Ordinarily, any excess current will be taken off and away by a ground wire which is attached to a nearby water pipe from the lighting switch. The misconnection caused the current overload to be so great that it exceeded the carrying capacity of the ground wires and caused them to overheat to the point of incandescence.

Defendant's carelessness relates to the ground wire in building 295. Douglass Bros., Inc. no longer contends that defendant 'was negligent with respect to the other structure. A No. 6 wire had been used in building 295 as a ground wire, and it had been connected to a nearby water pipe from the second light switch in the north portion of the building. A No. 2 wire, which is larger than a No. 6, and which can bear a greater current, should have been used instead, and it should have been connected from the main switch to a nearby water pipe. A ground wire from the main switch increases the possibility of minimizing the damage to the building in case of overheating of the ground wire caused by excessive current. The size of the ground wire is usually dictated by the size of the service entrance wires that carry the electricity from the power pole outside the building, to the main switch within the building. Considering the size of the service entrance wires to building 295, a No. 6 ground wire was insufficient to carry off the excessive current to which those wires might reasonably be expected to become subject.

The connection of the ground wire to the second switch in the north portion of the building is itself insufficient basis upon which to conclude that defendant's negligence was a substantial contributing factor to the property loss in building 295. Had the connection been made properly, at the main switch, fire probably would have occurred in any event, because of plaintiff's misconnection outside and defendant's use of a No. 6 ground wire inside. But such damage as was done to the computers and plotting boards housed in the north portion of the building would have been avoided. The extent of damage to these items amounted to $16,945.32. Other damage may have occurred near the main switch instead, had the ground wire been connected there. The facts are not fully developed in this regard.

The lighting system in building 297 was grounded from the main switch, and with a proper size wire, and the fire occurred around this main switch. The matter is not free from doubt, but we assume that if the system were properly installed in building 295, the result would have been the same. The No. 6 wire in building 295 then, only hastened combustion. But there is nothing in the record that shows defendant would have suffered the loss it did near the second switch had the ground wire not been imprudently placed there. The evidence leads more to the conclusion that had the ground wire been properly located the loss to defendant would have been less.

Plaintiff is entitled to recover the contract price for the work done less an

amount of money which will adequately compensate defendant for the damage to building 295, caused by the carelessness of L. G. Simon Company's employees. To the extent that defendant's failure to properly ground the lighting system increased and extended the damage caused by plaintiff's negligence, to that extent plaintiff shall not be liable to compensate defendant under paragraph 31 of the contract. Plaintiff is responsible only for the destruction caused by its own agents and employees.

An additional amount of money equal to the total damage caused to building 297 shall also be taken from the compensation otherwise due plaintiff. Plaintiff's misfeasance alone was operative in causing damage to this structure.

This case is remanded to the Commissioner pursuant to Rule 38(c) with instructions to recommend that plaintiff receive the sum of $32,247.82, less $200, the total amount of damage done to building 297, and less an amount which is equal to the loss due to the destruction to building 295 caused by plaintiff's negligence, exclusive of defendant's negligence.