L. G. SIMON, doing business as Simon Electric Company, Appellant,

v.

MARYLAND CASUALTY COMPANY, Appellee.

No. 22073.

United States Court of Appeals Fifth Circuit.

Nov. 23, 1965.

**610**

W. C. Peticolas, El Paso, Tex., for appellant.

William Duncan, El Paso, Tex., for appellee.

Before HUTCHESON, BROWN and COLEMAN, Circuit Judges.

JOHN R. BROWN, Circuit Judge:

The question in this case is whether the defense coverage provisions and no action clause of a general liability policy are to be read so literally that an assured, who in an adversary proceeding has been adjudicated guilty of negligence by a constitutional court,[1] is denied any coverage because the suit was by, not against, him and no affirmative monetary judgment was rendered against him. The District Court in this declaratory judgment action held no coverage. We disagree and reverse.

The facts, neither complex nor conflicting, may be briefly capsulated to reveal this controversy which is now in its second decade. In May 1953 Douglas Bros., Inc., the Contractor, executed a contract with the United States to convert an electrical system at Holloman Air Force Base, New Mexico, from a low to a higher voltage. The contract prescribed that the Contractor should be responsible for all damages to property resulting from its negligence. In June the Contractor sublet the labor on this contract to the Assured-subcontractor.[2] A few days later the general liability policy was issued by the Insurer[3] to the Assured-subcontractor. On September 26, 1953, the employees of the Assured-subcontractor during performance of the contract made a bad mistake. They connected a live wire of the new secondary, so we are told, to a neutral wire of the service drops to two buildings causing, not unnaturally, extensive fire damage to both buildings.

The Government through its Contracting Officer withheld from Contractor $32,247.82 from the amount due on the contract as damages caused by negligence of the employees of Contractor and Assured-subcontractor. The Contractor, in turn, withheld from the Assured-subcontractor the sum of $7,886.83 otherwise admittedly due. The Government, by contract and probably by statute,[4] had a bird-in-the-hand, as did the Contractor *vis-a-vis* the smaller Assured-subcontractor bird. Of course the Government did not have the right arbitrarily to withhold the funds. It could lawfully continue to do so only if the damages represented thereby had been caused by the negligence of the Contractor (and Assured-subcontractor). But to resolve that question, the pursued had become pursuer. Faced with the Government's claim of negligence and the immediate loss of the use of $7,886.83 thus withheld, the Assured-subcontractor, having earlier given full notice of the occurrence and likely claim, formally requested the Insurer to protect the Assured's interest by participating with the Contractor in administratively and judicially challenging the Government's claim and retention. The Insurer declined on the ground that no suit had been filed *against* the Assured. The victim now of the Government's permissible self-help and no aid forthcoming

1. At least its Judges have been accorded constitutional stature. See Glidden Co. v. Zdanok, 1962, 370 U.S. 530, 82 S.Ct. 1459, 8 L.Ed.2d 671.

2. L. G. Simon doing business as Simon Electric Company.

3. Maryland Casualty Company.

4. See, e.g., 31 U.S.C.A. § 71 requiring the General Accounting Office to settle and adjust all claims against the United States. United States v. American Sur. Co., 5 Cir., 1946, 158 F.2d 12, held that this provision gives the GAO the right to withhold payment to contractors indebted to the United States. Cf. 31 U.S.C.A. § 227 providing for setoffs against judgments against the Government.

from its Insurer, the Assured followed suit and resorted to its own self-help as would a prudent uninsured person. It authorized the Contractor and Contractor's attorneys to act on its behalf and expressly agreed to share costs and attorneys' fees. Although the Insurer was kept fully posted, it adhered to its denial of coverage. After exhausting all administrative remedies, the Contractor sued the Government in the Court of Claims. On July 12, 1963, the Court found that the employees of the Assured-subcontractor had negligently caused the damage and remanded the case to the Trial Commissioner to determine the amount of damage. Douglass Bros., Inc. v. United States, 1963, 319 F.2d 872, 162 Ct.Cl. 289.[5]

Supplementing this self-help, the Assured about this same time instituted on September 22, 1955, the present suit for a judgment declaring the Insurer's obligation to protect the Assured's interests. Presumably to await the Court of Claims decision, all hands apparently acquiesced in letting this declaratory judgment suit lie fallow until June 1964 when it was tried below.[6]

Several things stand out sharply. First, the Assured-subcontractor has suffered the irretrievable, permanent loss of $7,886.83 plus its share of legal costs. Second, this loss was the direct result of operational negligence of its employees. And third, and perhaps more decisive, a full-fledged court having jurisdiction over the subject matter [7] and the parties in a genuine no-holds-barred-adversary proceeding necessarily determined that the conduct of the Assured-subcontractor was negligent. In a word, the Insurer got every protection it would have obtained had the suit been United States v. Simon or Douglass Bros., Inc. v. Simon. The question is, therefore, whether by any reasonable construction of the policy, it ought to bear the same liabilities.

Although there might be some doubt as to legal fees and costs, the answer is clear as to the money loss sustained through this court-enforced retention of funds. We need here only make short-hand reference to the dual, and frequently distinctive, nature of the coverage: (1) to pay sums for which the Assured is legally obligated [8] and (2) to defend any suit.[9] See American Fid. & Cas. Co. v. Pennsylvania Threshermen & Farmers' Mut. Cas. Inc. Co., 5 Cir., 1960, 280 F.2d 453; Green v. Aetna Ins. Co., 5 Cir., 1965, 349 F.2d 919; Burton v. State Farm Mut. Auto. Ins. Co., 5 Cir., 1964, 335 F.2d 317; National Sur. Corp. v. Wells, 5 Cir., 1961, 287 F.2d 102.

5. On March 26, 1964, the Commissioner fixed damages at $12,421.12 of which the Assured-subcontractor now bears $7,886.-83. On July 2, 1964, the Court of Claims affirmed this finding.

6. Judgment was rendered for the Insurer on July 27, 1964, almost a month after the Court of Claims affirmed the Commissioner's determination of damages. See note 5, supra.

7. See 28 U.S.C.A. § 2508 giving the Court of Claims jurisdiction over "any set-off * * * set up on the part of the United States against any plaintiff making claim against the United States in said court * * *."

8. The policy bound the Insurer:
"I Coverage B—Property Damage Liability
"To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages be-cause of injury to or destruction of property, including the loss of use thereof, caused by accident."

9. "II Defense, Settlement, Supplementary Payments
"As respects the insurance afforded by the terms of this policy, the company shall:
"(a) defend any suit against the insured alleging * * * destruction and seeking damages on account thereof * * *.
* * * * *
"(c) pay all expenses incurred by the company, all costs taxed against the insured in any such suit and all interest accruing after entry of judgment until the company has paid, tendered or deposited into the court such part of such judgment as does not exceed the limit of the company's liability thereon."

612

 Once it is recognized, as it must be, that having taken over and directly participated in the direction, control, and financing of the "defense" against the Government's claim of negligence, the Assured-subcontractor became as bound by the judgment as the named party,[10] the situation is within the literal terms of Coverage I (note 8, supra). The Assured-subcontractor has "become legally obligated to pay" money "as damages" for injury to property. Of course, the literal terms of the No-Action Clause [11] might first seem to support the defense so successfully urged by the Insurer below. But a moment's reflection demonstrates the contrary. On the Insurer's approach an assured would never have the judicial means of bringing a reluctant, recalcitrant insurer to account. And yet there is a vast body of case law in which disputes over coverage—precisely the issue here—are adjudicated in declaratory actions long before final judgment in the third-party damage action and frequently even in advance of a trial. See e. g., American Fid. & Cas. Co. v. Pennsylvania Threshermen & Farmers' Mut. Cas. Ins. Co., supra; Burton v. State Farm Mut. Auto. Ins. Co., supra.

 The fact is that for most situations the No-Action Clause in a liability, as distinguished from an indemnity, policy is directed at the injured third party, not the assured. See 8 Appleman, Insurance Law and Practice § 4851, at 256, 259, § 4854, at 264, 268 (1962). Courts have sometimes pointed out that the function of the clause is (1) to avoid joinder of the insurer by the injured person in the action against the assured,

and (2) to prevent suit against the insurer for a money judgment by the injured party or the assured until the damages have been fixed by final judgment or agreed settlement. And as an obvious elaboration to that may be added that the clause eliminates out-of-court settlements made between the assured and the damage claimant without the consent of the insurer. But even this restraint is limited since an assured is entitled to exercise the judgment of a prudent uninsured person in compromising the claim when the insurer repudiates coverage. United States Auto. Ass'n v. Russom, 5 Cir., 1957, 241 F.2d 296, 301; National Surety Corp. v. Wells, 5 Cir., 1961, 287 F.2d 102.

 Furthermore, both as to Coverage II (Defense) and as to the No-Action Clause, this decision of the Court of Claims satisfies the sense, purpose and true meaning of a "suit against the insured" (note 9, supra) and a "Judgment against the insured" (note 11, supra). A suit is against an assured when, in a judicial proceeding to which he is a party (or deemed by the law to be a party), a definable claim or contention is asserted that the assured has a legal liability for damage or injury to person or property. Similarly, it is a judgment against an assured where, in such a situation, the tribunal renders an enforceable decree adjudging that the assured has a legal obligation to pay, reimburse or bear, the loss sustained by the third party. Thus, for example, a claim by way of offset, not an affirmative counterclaim, F.R.Civ.P. 13, or striking the balance in a maritime half-damage situation, see, e. g., Gilmore & Black,

10. See Bros, Inc. v. W. E. Grace Mfg. Co., 5 Cir., 1958, 261 F.2d 428, 430, and cases cited therein; Hartford Acc. & Indem. Co. v. Gainsville Nat. Bank, 5 Cir., 1941, 124 F.2d 97; Hauke v. Cooper, 5 Cir., 1901, 108 F. 922; 8 Appleman, Insurance Law and Practice § 4860, at 291 (1962).

11. "CONDITIONS
"* * * * *
"11. Action Against Company. No action shall lie against the company unless,

as a condition precedent thereto, the insured shall have fully complied with all the terms of this policy, nor until the amount of the insured's obligation to pay shall have been finally determined either by judgment against the insured after actual trial or by written agreement of the insured, the claimant and the company."

Admiralty §§ 3–39, 7–4, 7–6 (1957); The Ella Warley—North Star, 1882, 106 U.S. 17, 22–23, 1 S.Ct. 41, 46, 27 L.Ed. 91, 93–94, obviously would be covered.

■ In these situations other than the straight-out traditional peremptory suits against the assured, it must be recognized, of course, that the legal fees and expenses for which the insurer is liable must be those incurred in the resistance—i. e., "defense"—of the contention of liability for damage. Thus, in our case, in entering on remand the declaration or other judgment (which perhaps can now be a money judgment, F.R. Civ.P. 54(c)), the District Court will have to eliminate from allowable legal fees and expenses any amount incurred for "non-defense" purposes.[12]

■ Although some support for our disposition can be generated from the cases urged by the Assured-subcontractor dealing with quite different policies and situations,[13] we prefer to rest our conclusion upon the analysis which seeks to discover the real content and meaning, not the mere external shells, of the words used in the policy provisions. Both from the standpoint of the risks for which the Assured needed coverage and which the Insurer obviously meant to cover, there is a complete parallel between the policy and the result we ordain. The Assured as one engaged in the contracting business obviously had need of insurance against damage to persons and property occasioned by negligence of its servants. This is precisely what the Insurer undertook to sell and to sell undoubtedly with the same enthusiasm as any other member of the American-profit-seeking business community. Exactly that and nothing else happened. The Assured-subcontractor's employees were negligent. That negligence caused substantial damage. The property owner (the Government) asserted a claim and had on its side the greatest sanction of all—possession of the money which was more than the celebrated nine points to put the shoe on the foot of the Assured-subcontractor. On the other side, as we pointed out earlier, the Insurer got every protection it would have obtained had the litigation followed the traditional, orthodox pattern of a suit and judgment *against* the Assured-subcontractor.

And this all becomes doubly clear when approached in terms of what practical steps could have been taken and what practical significance any such steps would have had to put this seriously asserted claim of negligent damage in the mold of the traditional third-party damage suit which would have satisfied every requirement and theory asserted now by the Insurer. There was, first, no way to force the United States Government to sue either the Contractor or the Assured-subcontractor. Nor was anything to be gained by requiring that the Contractor sue the Assured-subcontractor. That suit would have been a conditional, protective one at best. It would have asserted only that the damage had been done and that the Government in the administrative proceedings was taking the position that the damage was caused by negligence of Contractor and Subcontractor. Since the only way to test this issue was to file suit in the Court of Claims for recovery of sums otherwise due the Contractor, the prayer could then have been for nothing more than either a declaration or a judgment for damages if and when, but not before, the Court of Claims would sustain the contention of the Government.

■ And, of course, the Assured-subcontractor could do nothing more. It called on the Insurer to fulfill its role and perform its duties. When it got

---

12. This would include such things as establishing controverted items, if any, of the contractor's claim for work performed, e.g., proving satisfactory completion of the work against which the Government was then asserting the offset for negligent damage to other property.

13. Madawick Contracting Co. v. Travelers Ins. Co., 1954, 307 N.Y. 111, 120 N.E.2d 520; Cross Properties, Inc. v. Home Indemnity Co., 1964, 41 Misc.2d 822, 246 N.Y.S.2d 683.

no answer, or an unsatisfactory one, it instituted this declaratory judgment suit and bided its time until what was formerly academic—the possibility of the Government sustaining a claim—was reduced to the stark reality of the Court of Claims judgment. The upshot of it is that for a case and a claim admittedly within the coverage of the policy, meeting both the needs of the Assured and full protection of the Insurer, the Insurer bears no liability because the form of the litigation was unorthodox. The language of neither the Defense Coverage Clause nor the No-Action Clause was ever intended to bring about such an artificial windfall.

Reversed and remanded.