**DELTA ELECTRIC CONSTRUCTION COMPANY et al., Plaintiffs-Appellants,**

v.

**UNITED STATES of America, Defendant-Appellee.**

No. 29288.

United States Court of Appeals,
Fifth Circuit.

Jan. 4, 1971.

George W. Krog, San Antonio, Tex., for appellants.

Seagal V. Wheatley, U. S. Atty., Hugh P. Shovlin, Chief of the Civil Section, San Antonio, Tex., for appellee.

Before COLEMAN, INGRAHAM, and WILKEY,* Circuit Judges.

COLEMAN, Circuit Judge.

February 26, 1965, Delta Electric Construction Company, Inc. and Holland & Little, Inc., for convenience hereafter referred to as Delta, entered into a contract with the United States for the construction of certain improvements at Laredo Air Force Base, Laredo, Texas.

September 9, 1965, Delta's employee, Fred Garza, was working within an electric power load transfer cubicle at the Base. An electrical "short" occurred, with the result that Garza was seriously burned and government owned equipment was damaged to the amount of $1,162.23.

The contract authorized the contracting officer to require Delta to repair any damage done by it, but no such demand was made. Instead, Laredo Air Force personnel made the repairs.

Reports and correspondence were exchanged between officers at Laredo and the Fort Worth District of the United States Corps of Engineers relative to the amount of damage and the responsibility therefor. These reports were forwarded to the Chief, Construction Division, on October 13, 1965, after which they were forwarded to the Finance and Accounting Office.

* Of the District of Columbia Circuit, sitting by designation.

The District Counsel of the Corps reviewed the attachments and determined that under the doctrine of res ipsa loquitur Delta had caused and was liable for the damages. Counsel stated, however, that

"This presumption may be rebutted, but there is no contrary evidence in this file."

On December 2, 1965, Finance and Accounting returned the file with the following notation:

"Subject file is returned without action. Notification by letter to the contractor of the amount due for damages has not been made."

Subsequently, January 14, 1966, the District Counsel added a second comment to the file addressed to Chief, Construction Division, stating:

"Since the damages incurred by the Government are chargeable against the Contractor under the provisions of the contract, they should be deducted from a Pay Estimate."

On May 31, 1966, Chief, Construction Division, Fort Worth District, forwarded the file to the Resident Engineer in charge of this particular contract requesting that charges for the damages incurred by the government be deducted from a Pay Estimate due to the Contractor. This deduction of $1,162.23 was not made until the final estimate of August 4, 1966. Prior to that deduction Delta had received no notice whatever of the claim.

Delta promptly filed suit under the Tucker Act, 28 U.S.C.A. § 1346(a) (2), to recover the amount of the deduction and moved for summary judgment. The government moved to dismiss the suit. On January 5, 1968, the District Court denied plaintiffs' motion for summary judgment on the ground that the contractors had not exhausted prerequisite administrative remedies.

The government's motion to dismiss was held in abeyance pending decision of the Armed Services Board of Contract Appeals.

Delta took its case to the Armed Services Board of Contract Appeals and received a hearing on March 13, 1968. After eight months deliberation, the Board denied Delta's claim, November 18, 1968.

Delta then filed a second amended complaint which recited the history of the matter and further alleged:

"The action, findings and conclusions of the Contracting officer and the Armed Services Board of Contract Appeals were arbitrary, capricious, an abuse of discretion and were not in accordance with law. By failing to give Plaintiffs prompt and reasonable notice that a claim was, or would be, asserted against them by reason of such alleged property damage and by unilaterally deducting $1,162.23 from Plaintiffs' Final Payment Estimate No. 14, Defendant breached the terms of its contract with Plaintiffs, acted in excess of its statutory jurisdiction and authority, deprived Plaintiffs of any effective administrative remedy to which Plaintiffs were entitled by the terms of such contract and damaged Plaintiffs in the amount of $1,-162.23."

The government answered this second amended complaint and the plaintiffs filed a second motion for summary judgment, asserting "There is no genuine issue as to any material fact herein and, under the undisputed facts plaintiffs are entitled to judgment as a matter of law".

The United States countered with a motion for summary judgment.

On January 12, 1970, the District Court denied plaintiffs' second motion for summary judgment and granted judgment to the government, stating that the controversy between the parties was a matter within the jurisdiction of the Armed Services Board of Contract Appeals and that there was substantial evidence in the record to support the findings of the Board. It was further held that the Board had correctly applied the law to the facts.

From this action the plaintiffs have appealed to this Court.

On appeal it is asserted that the government breached its contract by (1) delaying eleven months before notifying plaintiffs that they were being held liable for damages to government property and by (2) failing to give plaintiffs timely notice of the claim they were deprived of any opportunity of effectively defending themselves against it, which, as a practical matter, consummated an absolute set-off, in breach of the contract.

More elaborately, it is urged that the plaintiffs would not be liable unless the short circuit was caused by the fault or negligence of the employee and, if that were established, plaintiffs' liability would be limited to the damages which were the sole fault of their employee; evidence to support these defenses could only be obtained through prompt investigation which would have followed notice that plaintiffs were being held responsible for the short circuit and the resulting damage; the mere occurrence of the short circuit did not constitute such notice and the facts concerning it were so equivocal that the District Counsel's determination of plaintiffs' liability was based upon the doctrine of res ipsa loquitur.

Plaintiffs conclude by saying that they have "expended several times the amount in controversy in an effort to secure a definitive judicial determination as to a contractor's rights when, long after the fact, when effective evidence-gathering investigation is no longer possible, the government asserts and, by withholding from contract earnings, collects a claim for property damage".

This Court must take a very dim view of the conduct of the responsible government officers (or officials) in this case. As a matter of fair play, if not of fundamental due process, we find nothing commendable in the delay of eleven months, and until final payment on the contract was due, before asserting a claim and simultaneously deducting the money by unilateral action. The government had a right to call on the contractor to make the repairs, but did not. Eleven months of silence could have had no reasonably foreseeable result but to lead the contractor to believe that no claim was intended and none would have to be defended. We repeat, this treatment of contractors, or others having business with the Sovereign, does not deserve the badge of judicial approval.

On the other hand, the position of the contractors is not free of infirmity.

The record very convincingly reflects that Garza was advised, not once but twice, that the power to the cubicle could not entirely be cut off except from another point. He chose to proceed without such a cut off. The "short" promptly ensued, burning him, and knocking out electrical aeronautical navigational equipment for six hours. When this case was heard before the Appeals Board in San Antonio Mr. Garza was there that day but the contractors did not put him on the witness stand.

The decision of the Armed Services Board of Contract Appeals, finding that the accident was caused by the negligence of the contractors and fixing the amount of the damages, is abundantly supported by the record.

It only remains to be decided whether as a matter of law, or of contract, the delay in giving notice defeats the government's right to retain the money.

We are of the opinion, under the facts of this case, that the issue should be answered in the negative.

As a general rule, the "government has the same right 'which belongs to every creditor, to apply the unappropriated moneys of his debtor, in his hands, in extinguishment of the debts due to him'", United States v. Munsey Trust Company, 1947, 332 U.S. 234, 239, 67 S. Ct. 1599, 1602, 91 L.Ed. 2022.

In a somewhat similar case (negligence of a subcontractor installing electrical systems at an Air Force Base) we have held that the government does not have the right arbitrarily to withhold

funds, Simon v. Maryland Casualty Company, 5 Cir., 1965, 353 F.2d 608, 610.

The action taken here against Delta was first dilatory and then summary, but it was not arbitrary because the government had a just claim, the active negligence of the contractors gave birth to that claim, and Delta had the right to a plenary hearing, which it received.

The case boils down to the contention that the failure to give timely notice deprived the contractors of an opportunity effectively to defend themselves against the claim. If this were true, arbitrariness would necessarily follow.

The fact is, however, that Garza, the contractors' employee, the man who proceeded to work without totally disconnecting all electric current in the cubicle, was right there when the "short" occurred. If not the chief actor he at least occupied a front seat at the performance. When the hearing was held before the Appeals Board Mr. Garza was

available, but silent. Appellant has failed to convince us that Delta might have learned something from others that it could not have learned from its own employee. We must conclude that no prejudice is shown to have been caused by the delay in the notice.

No prejudice being shown, the government prevails, not because it failed to handle the claim as properly as it should have but because the contractors negligently caused damages which the contract required them to pay for.

Once notice was given, the procedure followed was in compliance with 41 U.S. C. §§ 321, 322.[1] See United States v. Carlo Bianchi and Company, 1963, 373 U.S. 709, 83 S.Ct. 1409, 10 L.Ed.2d 652.

We are unimpressed by argument for Delta that the controversy was not handled in compliance with the standard disputes clause of the contract,[2] see United States v. Utah Construction & Min-

[1]. 41 U.S.C. § 321 provides: "No provision of any contract entered into by the United States, relating to the finality or conclusiveness of any decision of the head of any department or agency or his duly authorized representative or board in a dispute involving a question arising under such contract, shall be pleaded in any suit now filed or to be filed as limiting judicial review of any such decision to cases where fraud by such official or his said representative or board is alleged: *Provided, however,* That any such decision shall be final and conclusive unless the same is fraudulent or capricious or arbitrary or so grossly erroneous as necessarily to imply bad faith, or is not supported by substantial evidence."

41 U.S.C. § 322 provides: "No Government contract shall contain a provision making final on a question of law the decision of any administrative official, representative, or board."

[2]. 6. Disputes
(a) Except as otherwise provided in this contract, any dispute concerning a question of fact arising under this contract which is not disposed of by agreement shall be decided by the Contracting Officer, who shall reduce his decision to writing and mail, or otherwise furnish a copy thereof to the Contractor. The decision of the Contract-

ing Officer shall be final and conclusive unless, within 30 days from the date of receipt of such copy, the Contractor mails or otherwise furnishes to the Contracting Officer a written appeal addressed to the head of the agency involved. The decision of the head of the agency or his duly authorized representative for the determination of such appeals shall be final and conclusive. This provision shall not be pleaded in any suit involving a question of fact arising under this contract as limiting judicial review of any such decision to cases where fraud by such official or his representative or board is alleged: PROVIDED, HOWEVER, that any such decision shall be final and conclusive unless the same is fraudulent or capricious or arbitrary or so grossly erroneous as necessarily to imply bad faith or is not supported by substantial evidence. In connection with any appeal proceeding under this clause, the *Contractor shall be afforded an opportunity to be heard and to offer evidence in support of his appeal.* Pending final decision of a dispute hereunder, the Contractor shall proceed diligently with the performance of the contract and in accordance with the Contracting Officer's decision.
(b) This Disputes clause does not preclude consideration of questions of

ing Company, 1965, 384 U.S. 394, 86 S. Ct. 1545, 16 L.Ed.2d 642; United States v. Carlo Bianchi and Company, *supra.*

We likewise reject the contention that only the Comptroller General had the authority to make this deduction. It was specifically authorized by 32 C.F.R., §§ 163.98–163.122, particularly § 163.106–1.[3]

The judgment of the District Court is

Affirmed.

law in connection with decisions provided for in paragraph (a) above. Nothing in this contract, however, shall be construed as making final the decision of any administrative official, representative, or board on a question of law.

3. § 163.106–1 Routine Offset

When a disbursing officer with primary responsibility for collection (§ 163.100) determines an amount to be due, and has on hand for payment at the time bills payable to the contractor and available for offset against the amount due from the contractor, the disbursing officer should make appropriate offset. In these cases, explanatory notice to the contractor would take the place of demand (§ 163.106) on the contractor, to the extent the debt has been reduced or eliminated by the offset. Similar withholding and offset is also expected when a debt is reported to the disbursing officer by a contracting officer, except as provided in § 163.108–2.