IBP, INC., a Delaware corporation, Plaintiff,

v.

NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA, a Pennsylvania corporation, Defendant.

No. CIV 01–4240.

United States District Court, D. South Dakota, Southern Division.

Dec. 3, 2003.

William P. Fuller, William G. Taylor, Woods, Fuller, Shultz & Smith, Sioux Falls, SD, Nicholas J. Zoogman, Dickstein, Shapiro, Morin & Oshinsky, LLP, New York, NY, for Plaintiff.

Donald A. Porter, Patricia A. Meyers, Costello, Porter, Hill, Heisterkamp, Bushnell & Carpenter, Rapid City, SD, for Defendant.

## MEMORANDUM OPINION AND ORDER

PIERSOL, Chief Judge.

The Plaintiff IBP, Inc. filed a Motion for Summary Judgment, Doc. 50. The Defendant, National Union Fire Insurance Company of Pittsburgh ("National Union"), filed a response and IBP filed a reply. Oral arguments on the motion were heard during the Pretrial Conference on November 3, 2003. For the reasons set forth below, the motion will be granted in part and denied in part.

## BACKGROUND

This is an insurance coverage dispute. IBP contends that it incurred costs defending itself against a claim by Tyson Foods, Inc. claiming that IBP fraudulently induced Tyson into signing a multi-billion dollar merger agreement on January 1, 2001. Tyson brought an action for rescission of the merger agreement in the State of Arkansas. Rather than answering the complaint in Arkansas, IBP filed a cross claim against Tyson in a securities litigation action being litigated in Delaware where both IBP and Tyson were named as defendants. *See In re IBP, Inc. Shareholders Litigation,* 789 A.2d 14 (Del.Ch. 2001) (post-trial opinion on the issue of whether the merger agreement was valid and enforceable); *In re IBP, Inc. Shareholders Litigation,* 789 A.2d 14 (Del.Ch. 2001) (opinion describing the securities litigations in which both IBP and Tyson were named defendants). In its cross claim, IBP sought declarations that it had not fraudulently induced Tyson to enter the merger agreement, that the merger agreement was valid and enforceable and requested specific performance by Tyson of the merger agreement. The details of these transactions and various claims will be further explained below. National Union admits that it must pay IBP's defense costs in the Arkansas litigation pursuant to the Directors & Officers insurance policy at issue, but contends that the policy does not cover the costs IBP incurred in the Delaware litigation to the extent that IBP sought affirmative relief by requesting specific performance, rather than solely defending against Tyson's allegations.

IBP brought this action seeking declaratory relief that National Union is contractually obligated to pay IBP's legal fees

paid in both the Arkansas action and the Delaware action. In the Amended Complaint, Doc. 39, IBP asserts the following causes of action: (1) complaint for declaratory relief; (2) claim for bad faith refusal to pay IBP's legal fees in the Delaware action or the Arkansas action, despite National Union's admission that the legal fees in the Arkansas action are reimbursable under the Policy; and (3) claim for negligent or fraudulent misrepresentation of coverage. In the third cause of action, IBP asserts that National Union is estopped from denying reimbursement for the full amount of the legal fees in the Arkansas and Delaware actions because IBP relied upon negligent or fraudulent misrepresentations of National Union's agent regarding the procedure for submitting claims under the Policy.

The merger agreement at issue between IBP and Tyson was reached after intense negotiations in late 2000. Tyson was bidding against another potential purchaser. In December 2000, Tyson's bid was the highest bid for the purchase of IBP. IBP and Tyson entered into a multi-billion dollar merger agreement on January 1, 2001. During the negotiations, IBP informed Tyson of accounting irregularities at one of IBP's subsidiaries that would result in a restatement of its prior earnings of over $30 million. Despite this knowledge of an expected reduction in earnings, but without knowing the exact amount, Tyson signed the merger agreement. The merger agreement disclosed this expected restatement of earnings but did not provide an estimate or exact amount of the expected restatement.

Rather than performing under the terms of the merger agreement, Tyson filed an action against IBP in Arkansas on March 29, 2001 to rescind the agreement. On the same day that Tyson filed the Arkansas action, it sent a letter to IBP alleging that IBP inappropriately induced Tyson to enter into the merger agreement and stated that Tyson was entitled to receive compensation from IBP. In the Arkansas complaint, Tyson alleged claims for fraud in the inducement and constructive fraud by IBP and sought rescission of the merger agreement as well as litigation expenses. Tyson also sought to be reimbursed by IBP for a $66.5 million advance Tyson paid IBP under the terms of the merger agreement to pay a termination fee to an entity who had entered a prior buyout agreement. IBP gave notice of the Arkansas action to National Union.

One of the law firms retained by IBP was Wachtell Lipton Rosen & Katz, which was one of the firms on the Policy's list of panel counsel. Eric Roth was one of the lead attorneys to represent IBP in this litigation. Tyson was being represented by Skadden Arps Slate Meagher & Flom.

IBP's reaction to Tyson's Arkansas complaint was to file a cross claim in Delaware in a pending shareholder action where both IBP and Tyson were named as defendants. IBP did not want to pursue the issue of Tyson's right to rescind in Arkansas, which was Tyson's home state. One of National Union's representatives recognized that it would be better for this litigation to occur in Delaware rather than Arkansas. In the Delaware action, IBP sought an order to prevent Tyson from litigating these claims in Arkansas. On April 20, 2001, the court in Delaware, the Honorable Leo E. Strine, Jr., temporarily enjoined Tyson from proceeding with the litigation in Arkansas.

On April 23, 2001, Tyson filed a counterclaim against IBP in the Delaware case. Tyson made essentially the same allegations of fraud in the Delaware case as it made in the Arkansas case. The relief requested by Tyson in the Delaware case was essentially the same as that requested

in the Arkansas case. Tyson sought rescission of the merger agreement and a related confidentiality agreement, reimbursement of the $66.5 million advance paid to IBP, an award of costs and expenses incurred by Tyson in negotiating the confidentiality and merger agreements and in bringing the litigation for rescission, and an order declaring that IBP breached the merger agreement.

The Delaware litigation was expedited by Vice Chancellor Strine and it involved "massive amounts of discovery and two weeks of trial." *Id.* All discovery was completed in six weeks, during which time the parties took approximately 80 depositions in many different locations, as well as produced and examined hundreds of thousands of pages of documents. The parties briefed and argued several motions and filed voluminous pre-trial and post-trial briefs. The two-week trial was held during the second half of May 2001. Vice Chancellor Strine issued his opinion on June 15, 2001. He summarized his conclusions as follows:

●The Merger Agreement specifically allocated certain risks to Tyson, including the risk of any losses or financial effects from the accounting improprieties at DFG, and these risks cannot serve as a basis for Tyson to terminate the Agreement;

●None of the non-DFG related issues that the SEC raised constitute a contractually permissible basis for Tyson to walk away from the Merger;

●IBP has not suffered a Material Adverse Effect within the meaning of the Agreement that excused Tyson's failure to close the Merger; and

●Specific performance is the decisively preferable remedy for Tyson's breach, as it is the only method by which to adequately redress the harm threatened to IBP and its stockholders.

*Id.* at 22–24.

The Delaware court specifically found that the allegations of fraud by Tyson were not the true motivation for seeking to rescind the merger agreement. Before the merger agreement was signed, IBP's counsel received a letter from the Securities and Exchange Commission (SEC) regarding how IBP was going to report the accounting irregularities at its subsidiary. This letter was not disclosed to Tyson, but the Delaware court found that despite Tyson's assertion that the SEC letter justified rescission of the merger agreement Tyson was fully aware of the issues raised by the SEC's letter before Tyson signed the merger agreement. *See id.* at 23. The Delaware court further found that "the most important reason that Tyson slowed down the Merger process was different: it was having buyer's regret. Tyson wished it had paid less especially in view of its own compromised 2001 performance and IBP's slow 2001 results." *Id.* Thus, IBP successfully defeated all of Tyson's allegations of fraud.

When the Delaware litigation was completed, IBP's lawyers submitted a bill to IBP in the amount of approximately $10.1 million. IBP negotiated a $1 million reduction in that bill. Thus, IBP paid $9.1 million to its lawyers and submitted a claim in that amount to National Union under the Policy. National Union denied IBP's claim, with the exception that it would pay IBP's legal fees and expenses incurred in the Arkansas litigation. National Union's view was that the legal fees and expenses in the Delaware litigation were not "Defense costs," as defined in the policy, because IBP sought affirmative relief in the Delaware litigation by requesting specific performance of the merger

agreement, rather than solely defending against Tyson's claims.

IBP brought this action seeking an order requiring National Union to pay IBP's legal fees, costs and expenses incurred in connection with the Delaware litigation. Contending that the issues involved in this case are legal questions for the Court to resolve and that there are no genuine issues of material fact for trial, IBP moves for summary judgment. IBP contends that Tyson's March 29, 2001 letter to IBP, alleging misstatements by IBP that inappropriately induced Tyson to enter the merger agreement and advising that Tyson had a right to receive compensation from IBP, satisfies the Policy's definition of a "Claim" because it was "a written demand for monetary or non-monetary relief." In addition, IBP contends the Arkansas action satisfies the Policy's definition of a "Securities Claim." Citing several cases, IBP maintains that a policyholder's legal fees that are reasonably related to defending itself are covered even if they are incurred in taking affirmative action, such as filing a complaint or counterclaim.

Additionally, National Union has challenged the reasonableness of the legal fees IBP paid in connection with the Delaware litigation, and has claimed that those legal fees are not adequately itemized or supported by documentation. IBP argues that National Union is estopped from contesting the reasonableness of IBP's legal fees in the Delaware litigation because IBP followed the procedure it had used in prior securities litigation covered by the Policy. The procedure used in the Delaware litigation as well as past litigation was that IBP selected and retained panel counsel, IBP paid panel counsel's legal fees and then submitted the bills to National Union for payment. Mark Curley, National Union's agent, previously informed IBP's agent, The Hays Group, that this was the procedure for payment of legal fees under the Policy. IBP followed this procedure in at least two prior securities actions, and was not required to supply itemized billing statements from panel counsel in those two prior actions. Moreover, IBP contends the Policy does not require IBP to submit panel counsel's bills in any particular format.

In the alternative, IBP asserts that if the Court does not grant summary judgment in its favor, that any issues regarding the reasonableness of its legal fees is a question for the Court, rather than for a jury. If the Court were to reduce the amount of legal fees payable under the Policy, IBP contends that the difference, between its payment of $9.1 million and the amount the Court finds due and owing under the Policy, amounts to compensatory damages sustained by IBP due to reliance on Mr. Curley's representations concerning the proper procedures for submitting legal bills for payment under the Policy and National Union's failure to advise IBP of any potential limitations or requirements not contained in the Policy.

National Union responds to IBP's summary judgment motion by arguing that the "plain meaning" of "defense costs" under the Policy cannot include costs incurred in the prosecution of either a counter-claim or cross-claim because IBP was not merely attacking Tyson's right to recover or establish what Tyson sought, but went beyond that to seek affirmative relief against Tyson. IBP's cross-claim in the Delaware litigation was more than a declaratory judgment action. In the Delaware litigation IBP sought either specific performance or money damages. Moreover, contending that IBP has the burden of proving the amount of its defense costs, National Union maintains that the amount of defense costs has not been established

because of inadequate records from IBP's attorneys in both the Arkansas and Delaware actions. In its brief in response to IBP's motion, National Union states "... it is conceivable that IBP's entire claim might be covered, but [National Union] is unable to make that determination without clear information indicating the nature of the services provided by [IBP's lawyers] Wachtell Lipton." (Doc. 58, page 2.) National Union has admitted IBP is entitled to recover the costs in the Arkansas action and that IBP "may be entitled to 'defense costs' related to the Tyson counterclaim against IBP in Delaware." (Doc. 58, page 14.) Responding to IBP's estoppel argument, National Union asserts that in one of the prior claims under the Policy, National Union did not pay any "defense costs" related to that litigation and the billing invoice submitted by IBP contained detailed information about the services provided. In contrast, the legal bills submitted by IBP in this case contain nearly $4 million in charges with no explanation of the services provided. On the issue of whether National Union is entitled to a jury trial, it asserts that the reasonableness of IBP's legal fees is a clear fact issue that must be submitted to a jury because IBP is seeking an award of its legal fees as *damages* in this action.

In reply, IBP emphasizes that the policy required it to select counsel from the list of attorneys and law firms stated in the policy and that IBP complied with that directive. IBP asserts that it was justified in believing that National Union, having required IBP to retain counsel from the pre-authorized list, had pre-authorized the manner in which counsel would submit bills and the amount of the hourly fees to be charged.

## DISCUSSION

Summary judgment is appropriate if the moving party establishes that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R.Civ.P. 56(c); *see Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In reviewing a motion for summary judgment, the Court views the evidence in a light most favorable to the non-moving party. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). "Where the unresolved issues are primarily legal rather than factual, summary judgment is particularly appropriate." *Mansker v. TMG Life Ins. Co.*, 54 F.3d 1322, 1326 (8th Cir.1995) (citations omitted).

The interpretation of an insurance policy is governed by state law. *See TNT Speed & Sport Ctr., Inc. v. American States Ins. Co.*, 114 F.3d 731, 732 (8th Cir.1997). The South Dakota Supreme Court has explained that "[t]he existence of the rights and obligations of parties to an insurance contract are determined by the language of the contract, which must be construed according to the plain meaning of its terms." *Biegler v. American Family Mut. Ins. Co.*, 621 N.W.2d 592, 598–99 (S.D.2001). The Eighth Circuit has further explained that "[w]here the facts upon which liability is claimed or denied under an insurance policy are undisputed and the existence or amount of liability depends solely upon a construction of the policy, the question presented is one of law ...." *Diocese of Winona v. Interstate Fire & Cas. Co.*, 89 F.3d 1386, 1392 (8th Cir.1996).

The Directors, Officers and Corporate Liability Insurance Policy ("the Policy") at issue in this action was purchased by IBP from National Union for the period October 16, 1998 to October 16, 2002. In the Policy, National Union promised to pay

IBP's "Defense Costs," defined in the Policy as:

> "Defense Costs" means reasonable and necessary fees, costs and expenses consented to by the Insurer ... resulting solely from the investigation, adjustment, defense and appeal of a Claim against the Insured, but excluding salaries of Officers or employees of the Company.

A "Claim" is defined in the Policy as:

> a written demand for monetary or non-monetary relief; or
>
> a civil, criminal, or administrative proceeding for monetary or non-monetary relief which is commenced by:
>
>> (i) service of a complaint or similar pleading; or
>>
>> (ii) return of an indictment (in the case of a criminal proceeding); or
>>
>> (iii) receipt or filing of a notice of charges.
>
> The term "Claim shall include a Securities Claim; provided, however, that with respect to Coverage B(i) only, Claim or Securities Claim shall not mean a criminal or administrative proceeding against the Company.
>
> IBP does not contend that the policy language is ambiguous".

Having reviewed the entirety of Vice Chancellor Strine's opinion, it is clear that neither Tyson nor IBP believed the issue of specific performance was a significant issue in the Delaware litigation:

> Having determined that the Merger Agreement is a valid and enforceable contract that Tyson had no right to terminate, I now turn to the question of whether the Merger Agreement should be enforced by an order of specific performance. Although Tyson's voluminous post-trial briefs argue the merits fully, its briefs fail to argue that a remedy of specific performance is unwarranted in the event that its position on the merits is rejected.

*In re IBP, Inc.,* 789 A.2d at 82. Thus, Tyson did not challenge IBP's prayer for relief of specific performance in the event the court found Tyson had not been fraudulently induced to enter into the merger agreement and was not justified in terminating the merger agreement. IBP's attorneys would have spent a limited amount of time on the issue of specific performance, but it is clear based upon the record before the Court that both IBP and Tyson were nearly exclusively litigating the issue of whether Tyson was fraudulently induced to enter the merger agreement and whether Tyson's termination of the merger agreement was justified by any of IBP's actions. A small fraction of Vice Chancellor Strine's lengthy opinion is devoted to the question of whether IBP was entitled to specific performance. *See In re IBP, Inc.,* 789 A.2d at 82–84. He noted it could have been Tyson's preference that, if Tyson lost on the issue of fraudulent inducement, specific performance be ordered because the potential damages award would have been "huge" and would result in no value to Tyson. *See id.* at 83, n. 204.

Several courts have held that even though an insured initiates a lawsuit, that fact does not automatically preclude coverage for defense-type legal fees and expenses where the insured is resisting a contention of liability for damages. *See Simon v. Maryland Cas. Co.,* 353 F.2d 608, 613 (5th Cir.1965) (holding that subcontractor insured was entitled to recover legal fees and expenses from insurer for bringing a declaratory judgment action asserting it was not negligent and was entitled to be paid funds withheld by the general contractor, despite a "defense" clause in policy); *Ultra Coachbuilders, Inc. v. General Sec. Ins. Co.,* 229 F.Supp.2d 284, 289 (S.D.N.Y.2002) (insur-

er was liable for legal fees incurred in asserting counterclaims in trademark infringement action because the counterclaims were " 'inextricably intertwined with the defense of [defendant's] claims and necessary to the defense of the litigation as a strategic matter.' " (citation omitted)); *Smart Style Indus., Inc. v. Pennsylvania Gen. Ins. Co.*, 930 F.Supp. 159, 161 (S.D.N.Y.1996) (holding that insurer was liable for attorney fees and costs in connection with insured's action for declaratory judgment that it did not infringe trademark, despite limitation to defense costs in policy); *Oscar W. Larson Co. v. United Capitol Ins. Co.*, 845 F.Supp. 458, 461 (W.D.Mich.1993) (insurer was liable for attorney fees and costs for insured's assertion of counterclaims and cross claims in negligence case because those claims were defensive in nature in that they were prosecuted to limit or defeat insured's liability); *Potomac Elec. Power Co. v. California Union Ins. Co.*, 777 F.Supp. 980, 984–85 (D.D.C.1991) (finding that an affirmative suit brought by an insured is not *per se* unrecoverable as a defense cost).

■ In this case, a review of the pleadings in the Arkansas action and the Delaware action demonstrates that IBP was defending Tyson's claims of fraudulent inducement and challenging Tyson's claimed right to rescind or terminate the merger agreement. IBP's cross claim in the Delaware action was in essence IBP's answer to Tyson's complaint in the Arkansas action. That IBP was defending Tyson's claims is further demonstrated by Tyson's answer to IBP's cross claim and counterclaim against IBP in the Delaware action. The substantive allegations in Tyson's counterclaim in the Delaware action are nearly identical to its claims in the Arkansas complaint.

The Court finds that there is no genuine issue of material fact on the question of whether the legal fees incurred by IBP in the Delaware action were "defense costs" as defined under the policy. The underlying facts upon which liability is claimed under the Policy are undisputed. The record contains the written pleadings in both the Arkansas and Delaware actions, which are the underlying facts that must be analyzed to determine whether the legal fees are "defense costs" as defined in the policy. Thus, the existence of liability here depends solely upon a construction of the policy and is a question of law. *See Diocese of Winona*, 89 F.3d at 1392. Having concluded IBP's legal fees in both the Arkansas and Delaware actions were "defense costs" and payable under the Policy, IBP is entitled to summary judgment on the issue of coverage. The Court finds, however, that for the reasons explained below genuine issues of material fact remain for trial on the question of whether the full amount of legal fees paid by IBP were "reasonable and necessary" as required by the policy. The amount of liability does not depend solely upon a construction of the Policy. This is a question of fact on which National Union is entitled to a jury trial. The parties have not addressed IBP's claim for bad faith in the summary judgment proceedings and that claim will also be presented to the jury.

■ Due to inadequate descriptions of tasks performed by IBP's lawyers, the Court is unable to determine as a matter of law whether the legal fees paid by IBP were "reasonable and necessary," and thus payable under the Policy. IBP's lawyer, Eric Roth, testified about the reasonableness and necessity of the legal fees incurred. IBP's explanation for the dearth of task descriptions by its lawyers is that the lawyers were consumed by the time pressures of the litigation, which did not permit them to record their tasks in any

detail. That may be so, but that explanation does not resolve the factual question regarding the reasonableness and necessity of the fees. Credibility determinations will need to be made by the finder of fact. Therefore, genuine issues of material fact remain for trial.

 Having concluded there are genuine issues of material fact remaining for trial on the issue of whether the legal fees, as submitted by IBP, are "reasonable and necessary," National Union is entitled to a jury trial on that question. Where there is a genuine issue of material fact precluding summary judgment on an insurance coverage question, the South Dakota Supreme Court has approved the submission of the coverage question to a jury. *See Biegler*, 621 N.W.2d at 598, 602. Although the Court, rather than a jury, routinely determines whether attorneys fees are reasonable under various statutes allowing for an award of attorney fees to the prevailing party, this case is distinguishable because the payment of legal fees in defending claims against IBP was the risk insured against, not a supplemental award for prevailing in the instant litigation.

While it is not clear from IBP's summary judgment motion, it appears from the briefing in this case that IBP is seeking summary judgment on the claim in the Amended Complaint for "Negligent or Fraudulent Misrepresentation of Coverage." IBP is not entitled to summary judgment on this claim. Each party has a different view, and submitted conflicting evidence, regarding IBP's past practice in submitting claims for payment under the Policy and National Union's response to those submissions. Thus, genuine issues of material fact remain for trial on this claim.

### CONCLUSION

IBP is entitled to partial summary judgment on its claim for Declaratory Relief to the extent that the Court finds the legal fees IBP incurred in the Delaware action are "defense costs" as defined by the Policy. Genuine issues of material fact remain for trial, however, on that portion of IBP's claim for Declaratory Relief involving the amount of legal fees paid by IBP that were "reasonable and necessary" and thus payable under the Policy. In addition, summary judgment is denied on IBP's claim for Negligent or Fraudulent Misrepresentation of Coverage. The bad faith claim stated in the Amended Complaint also remains for trial. Accordingly,

IT IS ORDERED:

1. That Plaintiff's Motion for Summary Judgment, Doc. 50, is granted on its claim for Declaratory Relief to the extent that the Court finds the legal fees Plaintiff incurred in both the Arkansas action and the Delaware action are "defense costs" as defined by the Policy and is denied in all other respects.