Bernice V. MANSKER, Individually and as Special Administratrix of the Estate of Michael Mansker, Deceased, Appellee,

v.

TMG LIFE INSURANCE COMPANY, Appellant.

Nos. 94–2554, 94–3130.

United States Court of Appeals, Eighth Circuit.

Submitted Feb. 17, 1995.

Decided May 2, 1995.

Marshall Ney, Little Rock, AR, argued for appellant (T. Scott Clevenger, on the brief).

George Ellis, Benton, AR, argued for appellee.

Before McMILLIAN, Circuit Judge, HEANEY, Senior Circuit Judge, and MORRIS SHEPPARD ARNOLD, Circuit Judge.

McMILLIAN, Circuit Judge.

TMG Life Insurance Co. (TMG) appeals from a final judgment entered in the United States District Court[1] for the Eastern District of Arkansas granting summary judgment in favor of Bernice V. Mansker (appellee). *Mansker v. TMG Life Ins. Co.*, No. LR–C–93–481 (E.D.Ark. May 19, 1994) (judgment). Pursuant to the district court's judgment, TMG is required to pay benefits to cover medical expenses resulting from fatal injuries suffered by appellee's son, Michael Mansker (Mansker). For reversal, TMG argues that the district court erred in holding that (1) Mansker's injuries did not "arise from his employment" under the group health insurance policy issued by TMG to Mansker's employer (the policy) and (2) issues of whether Mansker's hospital bills were "medically necessary" and "reasonable and customary" were properly before the district court. TMG also separately appeals the district court's award of attorney's fees and prejudgment interest. *Id.* (Aug. 15, 1994) (amended order awarding attorney's fees); *id.* (Aug. 11, 1994) (order stating amount of judgment with interest). For the reasons discussed below, we reduce the rate of prejudgment interest from 6% to 5.28%, affirm

1. The Honorable William R. Wilson, Jr., United States District Judge for the Eastern District of Arkansas.

the judgment of the district court as modified, and affirm the award of attorney's fees.

## Background

The underlying facts are not in dispute. Mansker was a construction crew supervisor for Dick Mooney, Inc. (Mooney), of Benton, Arkansas. Mansker's permanent address was in Benton, but he occasionally lived with his girlfriend in Vilonia, Arkansas, or in his motorhome. Mansker often used his motorhome to stay close to a job site. His employer would compensate him at a hotel rate if Mansker stayed in his motorhome and the job location would otherwise require him to stay away from home.

From February 1 through February 7, 1993, Mansker worked at a construction site in Springdale, Arkansas, 340 miles from Benton. The weekend before the Springdale job was to begin, Mansker brought his motorhome to Springdale and left it there. From February 1 to February 5, Mansker stayed at his girlfriend's house in Vilonia and commuted to Springdale. On Friday, February 5, Mansker and his girlfriend went to stay in the motorhome in Springdale, where they planned to stay through the weekend. Mansker worked all day Saturday and all day Sunday, finishing at 5:30 p.m. on Sunday, February 7, 1993. At approximately 8:30 p.m. on Sunday, February 7, 1993, after taking a shower, Mansker attempted to light the gas stove in his motorhome. The stove exploded, severely burning him. Mansker was airlifted to Arkansas Children's Hospital (the hospital), where he stayed in the burn unit until his death on April 18, 1993.

At all times in question, Mansker was covered by the policy issued by TMG to Mooney. Appellee, as administrator of Mansker's estate, sought coverage from TMG for Mansker's hospital bills. TMG denied coverage on grounds that an exclusion clause in the policy, which barred recovery for injuries "arising from any employment," applied to Mansker's injuries.[2]

On June 9, 1993, appellee, individually and as administrator of Mansker's estate, filed the present lawsuit in state court. The complaint alleged that TMG owed benefits in the amount of Mansker's hospital bills, minus any deductible or co-payment, plus interest. TMG removed the case to federal district court on grounds that the policy is governed by the Employee Retirement Income and Security Act of 1974 (ERISA), 29 U.S.C. §§ 1001–1461. The parties filed cross-motions for summary judgment. TMG argued that the injuries sustained by Mansker were excluded from coverage as a matter of law. Appellee argued that she was entitled to reimbursement for Mansker's medical expenses as a matter of law, and specifically demanded payment in the amount of $476,-420.77. In response to appellee's motion and statement of undisputed material facts, TMG maintained that an issue remained as to whether appellee had "exhausted her administrative remedies prior to filing suit." Appellee subsequently submitted affidavits supporting her contention that the amount sought was "medically necessary," "reasonable and customary," as required under the policy. At a hearing on the cross-motions, the district court orally ruled from the bench, holding that the "arising from any employment" exclusion clause did not apply to the facts of the present case, and that TMG was liable for the full amount requested by appellee. Judgment was so entered. *Mansker v. TMG Life Ins. Co.*, No. LR–C–93–481 (E.D.Ark. May 19, 1994). Thereafter, appellee moved to have the judgment reduced to a sum certain, for an award of prejudgment interest, and for an award of attorney's fees. The district court granted appellee's motions, reducing the judgment to a total sum of $502,356, including prejudgment interest calculated at a rate of 6% and postjudgment interest calculated at a rate of 5.28%. *Id.* (Aug. 11, 1994) (order). The district court also awarded appellee attorney's fees based upon 275 hours of work at a rate of $200 per hour. *Id.* (Aug. 15, 1994) (amended order). These appeals followed.

## Discussion

*Application of "Arising From Employment" Clause*

TMG first argues that the district court erred in holding, as a matter of law, that the

---

**2.** The exclusion in the policy provides: "This plan does not cover expenses due to ... [a]n injury, disease, or physical condition arising from any employment...."

"arising from any employment" clause in the policy did not apply to Mansker's injuries. Because the policy itself does not contain a definition of the term "arising from any employment," the parties directed the district court to analogous state law for guidance. The district court therefore considered Arkansas case law interpreting the phrase "arising out of and in the course of employment" in the state workers' compensation law, Ark.Code Ann. § 11-9-401(a)(1), to determine whether the "arising from any employment" exclusion in the policy applied to Mansker's injuries. The district court recognized the possibility that, under the facts of the present case, Mansker's injuries might be treated by the Arkansas workers' compensation commission, and by the Arkansas state courts, to "arise out of" his employment for purposes of applying § 11-9-401(a)(1).[3] The district court nevertheless held that Mansker's injuries did not arise from his employment for purposes of applying TMG's policy because the words "arising from any employment," in their plain meaning, simply do not connote as broad a meaning as has been liberally applied in Arkansas' so-called "traveling salesperson" workers' compensation cases. The district court therefore granted appellee's motion for summary judgment and held that TMG was liable to pay benefits covering Mansker's medical expenses. Transcript of Motion Hearing (May 17, 1994) at 33-34.

■ We review a grant of summary judgment de novo. The question before the district court, and this court on appeal, is whether the record, when viewed in the light most favorable to the non-moving party, shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *see, e.g., Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 2552-53, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50, 106 S.Ct. 2505, 2510-11, 91 L.Ed.2d 202 (1986); *Get Away Club, Inc. v. Coleman*, 969 F.2d 664, 666 (8th Cir.1992); *St. Paul Fire & Marine Ins. Co. v. FDIC*, 968 F.2d 695, 699 (8th Cir.1992). Where the unresolved issues are primarily legal rather than factual, summary judgment is particularly appropriate. *Crain v. Board of Police Comm'rs*, 920 F.2d 1402, 1405-06 (8th Cir.1990). Upon de novo review, we hold that the district court did not err in holding that Mansker's injuries are covered by the policy.

■ In fashioning federal common law under ERISA, including principles that govern the legal effect of plan terms, courts may look to state law for guidance so long as the state law is not contrary to the provisions of ERISA. *Brewer v. Lincoln Nat'l Life Ins. Co.*, 921 F.2d 150, 153, 154 (8th Cir.1990) (*Brewer*), *cert. denied*, 501 U.S. 1238, 111 S.Ct. 2872, 115 L.Ed.2d 1038 (1991). In *Brewer*, this court held that it could not apply the so-called "contra insurer rule," a principle of Missouri state law, to ascertain the meaning of a certain term in an ERISA plan, because that state law principle conflicted with the provisions of ERISA. *Id.* at 153. Thus, in the absence of guidance from state law, this court was compelled to "look elsewhere, first at ERISA itself." *Id.* at 154. The court then went on to hold:

> [The insurer] was required to furnish plan descriptions "written in a manner calculated to be understood by the average plan participant...." 29 U.S.C.

---

3. For example, in *Arkansas Dep't of Health v. Huntley*, 12 Ark.App. 287, 675 S.W.2d 845 (1984) (*Huntley*), the Arkansas Court of Appeals held that a workers' compensation claimant's injuries arose out of her employment when she sustained them while staying overnight at an out-of-town motel for work-related reasons. The claimant was injured in the evening by an assailant while returning from the motel bar to her motel room. She had worked during the day and it was undisputed that her visit to the bar was for personal recreation. The court in *Huntley* held that the claimant could recover workers' compensation benefits because, under the circumstances of her out-of-town travel, "activities of a personal nature, not forbidden but reasonably to be expected, may be a material incident of the employment and injuries suffered in the course of such activities are compensable." *Id.*, 675 S.W.2d at 849 (quoting *J. & G. Cabinets v. Hennington*, 269 Ark. 789, 600 S.W.2d 916, 918 (Ct.App.1980)); *but see Wilson v. United Auto Workers*, 246 Ark. 1158, 441 S.W.2d 475 (1969) (workers' compensation claimant's injuries did *not* arise out of employment when, while staying out of town in a motel for employment purposes, claimant returned to his motel during the noon hour, went swimming, and drowned in the pool).

§ 1022(a)(1).[4] It would be improper and unfair to allow experts to define terms that were specifically written for and targeted toward laypersons. This requirement provides a source from which we may fashion a federal common law rule; *the terms should be accorded their ordinary, and not specialized, meanings.*

*Id.* (emphasis added).

■ In the present case, we need look no further than *Brewer.* In applying the federal common law rule announced in *Brewer,* we must accord the term "arising from any employment" its ordinary, not specialized, meaning. *Id.* To rely on the specialized legal definition of the term "arising out of employment," as it has been liberally applied in Arkansas workers' compensation "traveling salesperson" cases, would be contrary to the provisions of ERISA because that legal definition is not consistent with what an average plan participant would understand the words to mean. *See* 29 U.S.C. § 1022(a)(1). As the district court explained, when the gas stove exploded in Mansker's motorhome at 8:30 p.m. on a Sunday evening, some three hours after he finished his work for the day, gone home, and showered, the injuries he sustained as a result of that explosion would not ordinarily be considered to have arisen from his employment, even if he was staying in his motorhome on that particular evening as a consequence of his job. *See* Transcript of Motion Hearing (May 17, 1994) at 34. We therefore affirm the district court's grant of summary judgment in favor of appellee on the issue of TMG's liability.

*Determination of Amount of Benefits*

■ TMG next argues that, even if the district court correctly held that Mansker's medical expenses are covered under the policy, the district court erred in granting summary judgment as to the amount of the medical expenses for which TMG is liable. Appellee filed affidavits to establish that the expenses requested were medically necessary, reasonable, and customary. Appellant's Appendix, Vol. II, at 422, 433. In response, TMG filed an affidavit of the TMG representative who handled Mansker's claim, which stated "[b]ecause TMG determined that Mansker's claims were not covered, TMG made no determination whether Mansker's expenses were medically necessary and/or usual, reasonable and customary charges for the expenses itemized." *Id.* at 445. The district court held that the expenses requested by appellee would be allowed as a matter of law because, on the evidence presented, there was no genuine issue of material fact.

TMG did not submit any evidence on the reasonableness or the necessity of Mansker's hospital bills apparently because it did not believe it had to. In its written response to appellee's statement of undisputed facts supporting her motion for summary judgment, TMG asserted that "an issue remains as to whether [appellee] exhausted her administrative remedies prior to filing suit." *Id.* at 410. At the motions hearing before the district court, and in its brief on appeal, TMG highlighted language in the policy which states "[p]ayment for these Covered Expenses is subject to: ... the Reasonable and Customary fee maximum **as established by Us**" and "[m]edical necessity is **determined by Us.**" (Emphasis added in brief for appellant.) TMG maintains that appellee's affidavits were insufficient as a matter of law on summary judgment because "[a]ppellee could not (and did not) offer an affidavit that would establish whether the expense was reasonable and customary *as determined by TMG.*"[5] Brief for Appellant at 24. In other

---

4. Under 29 U.S.C. § 1022(a)(1), the summary plan description of an employee benefit plan "shall include the information described in subsection (b) of this section, shall be written in a manner calculated to be understood by the average plan participant, and shall be sufficiently accurate and comprehensive to reasonably apprise such participants and beneficiaries of their rights and obligations under the plan." Subsection (b) provides that the plan description and summary plan description "shall contain ... cir-

cumstances which may result in disqualification, ineligibility, or denial or loss of benefits." *Id.* § 1022(b).

5. TMG also implies that it was not given adequate time to respond to appellee's claim that the expenses were medically necessary, reasonable, and customary. However, TMG concedes that these issues arose two and one-half months before the district court rendered its decision. In fact, appellee asserted in her statement of undis-

words, TMG's position has consistently been that any decision by the courts regarding the amount of expenses to be paid as benefits would be "premature" unless and until TMG has first passed upon the questions of what expenses were medically necessary and what is a reasonable and customary fee maximum for those types of expenses. In support of its position, TMG cites *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989) (*Bruch*), and *Cox v. Mid–America Dairymen, Inc.*, 965 F.2d 569 (8th Cir.1992) (*Cox*), because those decisions held that determinations made by a plan administrator or fiduciary regarding payment of plan benefits, where the administrator or fiduciary.has discretionary authority to make such determinations, are to be reversed only upon a finding of an abuse of discretion.

In essence, TMG would have this court conclude from *Bruch* and *Cox* that, where a plan administrator or fiduciary has discretionary authority to decide issues concerning the payment of plan benefits, but fails to make a decision on such issues because coverage is being denied, the courts may not independently decide the issues even upon determination that benefits were improperly denied.[6] We decline to adopt such a view. Rather, we hold that the consequence of TMG's failure to render a decision on certain issues concerning Mansker's medical expenses is that the district court could, as it did, decide the issues de novo. Our view is supported by *Weber v. St. Louis Univ.*, 6 F.3d 558, 560–61 (8th Cir.1993), in which this court addressed the analogous question of whether, on summary judgment, the district court could consider grounds raised by the plan administrator for denying coverage, even though such grounds had not been addressed at the time the decision to deny benefits was made. We held:

a trial court must consider all of the provisions of the policy in question if those provisions are proffered to the trial court as a reason for denial of coverage, since to do otherwise would "permit oral modification of employee welfare plans governed by ERISA, a result manifestly in conflict with the intent of the statute and with the case law governing it."

*Id.* at 560 (quoting *Farley v. Benefit Trust Life Ins. Co.*, 979 F.2d 653, 660 (8th Cir. 1992)). On the question of what evidence could be considered by the district court when reviewing such matters, we further explained:

[i]n *Donatelli v. Home Ins. Co.*, 992 F.2d 763, 765 (8th Cir.1993), the court held that in a *de novo* review of a denial of benefits under an employee welfare benefit plan governed by ERISA, the trial court has the discretion to decide whether to receive "evidence in addition to that presented" to the plan administrator and therefore to consider the case upon a "somewhat expanded" factual basis. We review a trial court's decision on that question for abuse of discretion. *Id.*

Thus, where an ERISA plan gives a plan administrator or fiduciary discretion to decide certain issues, the fact that the administrator or fiduciary fails to address or decide those issues does not exempt those issues from de novo review by the district court on summary judgment. In the present case, the district court did not err in addressing the issues of medical necessity, reasonableness, and custom. Moreover, the district court did not abuse its discretion in relying upon the affidavits submitted by appellee to support its position on these issues, particularly in light of TMG's deliberate failure to rebut the substance of those affidavits, despite having the opportunity to do so. We hold, upon de

---

puted material facts, filed on January 28, 1994, with her motion for summary judgment, that "[m]edical expenses incurred in connection with the treatment of Mansker prior to his death total $476,420.77 and were all 'medically necessary.'" Appellant's Appendix, Vol. II, at 388. Appellee's affidavits, specifically addressing these issues, were filed on February 28, 1994, after TMG disputed the factual integrity of appellee's statement. *Id.* at 422, 433.

**6.** TMG admits that it deliberately chose to wait for an outcome on the coverage issue before proceeding to a determination of an appropriate amount of medical expenses, because "such a determination was necessary only if the district court ruled in Appellee's favor [on the coverage issue]." Brief for Appellant at 24.

novo review, that no genuine issue of material fact exists as to whether the medical expenses sought by appellee are medically necessary, reasonable, and customary. We therefore affirm the district court's determination of the amount of benefits for which TMG is liable under the policy.

*Attorney's Fees*

█ TMG also separately appeals the district court's award of approximately $55,000 in attorney's fees. TMG argues that the fees were improperly awarded or, in the alternative, that the award is excessive. TMG first argues that the district court erred as a matter of law in awarding attorney's fees because appellee did not institute this action pursuant to ERISA and thus the attorney's fees provision of ERISA does not apply. *See* 29 U.S.C. § 1132(g) ("In any action under this subchapter ... the court in its discretion may allow a reasonable attorney's fee and costs of action to either party."). Contrary to TMG's suggestion that the action must be *brought* under ERISA, § 1132(g) simply permits the award of attorney's fees in actions "under [ERISA]." *Id.* Thus, the district court did not err in holding that this action, which TMG removed on grounds of ERISA preemption,[7] is an action "under" ERISA.

█ The decision to award attorney's fees in a particular case is discretionary. *Short v. Central States, S.E. & S.W. Areas Pension Fund,* 729 F.2d 567, 576 (8th Cir. 1984) (*Short* ). TMG argues that the district court abused its discretion in awarding attorney's fees, in light of the analysis set forth in *Lawrence v. Westerhaus,* 749 F.2d 494 (8th Cir.1984) (per curiam) (*Lawrence* ) (cited in *Lutheran Medical Ctr. v. Contractors, Laborers, Teamsters & Eng'rs Health & Welfare Plan,* 25 F.3d 616, 623 (8th Cir.1994) (*Lutheran Medical* )). In *Lawrence,* this court listed five factors to be considered in deciding whether to award attorney's fees: (1) the degree of culpability or bad faith which can be assigned to the opposing party, (2) its ability to pay, (3) the potential for deterring others in similar circumstances, (4) whether the moving party sought to benefit all plan participants or beneficiaries or to resolve a significant legal question regarding ERISA, and (5) the relative merits of the parties' positions. 749 F.2d at 495–96. Emphasizing the first and fifth factors, TMG argues that the fee award in the present case was inappropriate because TMG acted in good faith and because the merits of the parties' positions were relatively close. The district court reviewed each of the five *Lawrence* factors and held that each, to some degree, weighed in favor of appellee. Transcript of Post–Judgment Motions Hearing (August 11, 1994) at 4–5. The district court analyzed the five *Lawrence* factors as follows.

[Number one:] The degree of the opposing part[y's] culpability or bad faith. I don't find that [TMG] in this case was in bad faith, but I do think there was some slow walking and some bobbing and weaving.

Number two, the ability of the opposing part[y] to satisfy an award of attorney's fees, I find [TMG] able to do that, unless they can submit immediately some proof to the contrary.

[Number three:] [w]hether an award of attorney's fees against the opposing part[y] could deter other persons acting under similar circumstances. I think so in connection with construction work. I assume this is a fairly routine way that they move their employees around.

Number four, whether the part[y] requesting attorney's fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA itself. I think that goes along with what I said in answer to point number three, that it would help people in a similar situation.

[Number five:] [t]he relative merits of the parties' position[s], well, I decided every point in favor of [appellee] at the May hearing, and I think the merits are on [appellee's] side in this case, substantially.

*Id.*

Upon review, we hold that the district court did not abuse its discretion in awarding attorney's fees.

---

7. In its notice of removal, TMG stated "[appellee's] claim is a claim for benefits under an employee welfare benefit plan which is subject to [ERISA]."

■ TMG alternatively argues that the district court abused its discretion in awarding attorney's fees that are *excessive.* TMG requested an hourly rate of $125. Appellee requested an hourly rate of $250–275. Both submitted supporting affidavits. The district court used an hourly rate of $200. TMG argues that, while this is not a per se enhancement, it represents an abuse of discretion because the district court was unduly influenced by the fact that this type of case is typically taken on a contingency basis. TMG emphasizes the Supreme Court's disapproval of using a multiplier to enhance an attorney's fees award on the basis of a contingent fee arrangement. *City of Burlington v. Dague,* —— U.S. ——, 112 S.Ct. 2638, 120 L.Ed.2d 449 (1992). TMG also challenges the number of hours for which the district court awarded fees. TMG contends that the hours submitted were vague in their descriptions, duplicative, and excessive for the work done.

The district court carefully reviewed the documentation supporting appellee's request and provided reasons for its determination of the amount to be awarded. We also note that the district court did, in fact, reduce both the hourly rate and the number of hours requested. We hold, upon review, that the district court did not abuse its discretion in calculating the amount of the attorney's fees award.

■ TMG also argues that the award should be cut at least in half because this case was brought by appellee, as administrator of Mansker's estate *and individually.* TMG contends that appellee is neither a participant nor a beneficiary under the plan and thus the ERISA attorney's fee provision cannot benefit her individually. We reject this argument because there is nothing in the record to indicate that any extra attorney time was spent to benefit appellee individually; rather, the efforts of appellee's attorney were devoted to proving the merits of appellee's claim for coverage under the policy and related matters. The district court's award of attorney's fees is therefore affirmed.

*Prejudgment Interest*

Finally, TMG argues that the district court abused its discretion in awarding prejudgment interest, or at least erred in determining the rate of prejudgment interest.

■ "The question of whether interest is to be allowed, and also the rate of computation, is a question of federal law where the cause of action arises from a federal statute." *Dependahl v. Falstaff Brewing Corp.,* 653 F.2d 1208, 1218 (8th Cir.) (*Dependahl*), cert. denied, 454 U.S. 968, 102 S.Ct. 512, 70 L.Ed.2d 384 (1981). ERISA does not expressly provide for prejudgment interest. However, prejudgment interest awards are permitted under 29 U.S.C. § 1132(a)(3)(B) (providing for "other appropriate equitable relief"). *Dependahl,* 653 F.2d at 1219 (award of prejudgment interest necessary in order that plan participants obtain appropriate equitable relief). "Under ERISA, awards of ... prejudgment interest are discretionary.... We review the district court's decision to award prejudgment interest ... under an abuse of discretion standard, and reverse only if the record clearly shows an abuse of discretion." *Lutheran Medical,* 25 F.3d at 623 (citing *Short,* 729 F.2d at 576).[8]

■ TMG argues that there is no equitable basis for prejudgment interest in the present case because appellee has not yet paid the hospital bills and has not been charged for interest. Thus, TMG contends, prejudgment interest is not necessary to make appellee whole and would simply constitute a windfall. In response, appellee argues that if anyone is to obtain a "windfall," it certainly should not be the party which wrongfully withheld payment of benefits.

Aside from the fact that there is nothing in the record indicating whether or not appellee has paid the hospital bill or has been charged interest by the hospital, equity and sound public policy support the district court's decision to award prejudgment interest. In *Dependahl,* a dispute existed as to whether the

---

**8.** Notwithstanding the conclusion in *Short* that "the district court erred in its denial of prejudgment interest [to plaintiff Zorn], as a matter of law," the analysis used to reverse the district court's denial of prejudgment interest in that case was an abuse of discretion analysis. *See* 729 F.2d at 576.

plaintiffs were entitled to benefits under an employee pension plan; there was no dispute, however, as to the amount of funds that were at stake. 653 F.2d at 1219. Upon determining that the plaintiffs were in fact entitled to benefits, this court affirmed the district court's award of prejudgment interest, reasoning that the employer

> has continued to have the use of th[e] money. Furthermore, the exact amount of the liability on the plans was never in issue. The only question was whether the employee benefit plan was binding.... Under these circumstances, an award of prejudgment interest is necessary in order that the plan participants obtain "appropriate equitable relief." 29 U.S.C. § 1132(a)(3)(B).

Id.; see also Stroh Container Co. v. Delphi Indus., Inc., 783 F.2d 743, 752 (8th Cir.) (prejudgment interest serves purposes of making claimant whole, promoting settlement, and deterring attempts to benefit unfairly from inherent delays in litigation; prejudgment interest should ordinarily be granted unless exceptional or unusual circumstances exist making the award of interest inequitable), cert. denied, 476 U.S. 1141, 106 S.Ct. 2249, 90 L.Ed.2d 695 (1986). In the present case, we agree with the district court that there are no exceptional circumstances that would make the award of prejudgment interest inequitable. We therefore hold that the district court did not abuse its discretion in awarding prejudgment interest.

TMG argues, in the alternative, that even if the award of prejudgment interest was proper, the district court erred in calculating prejudgment interest at a rate of 6%, rather than 5.28%. In Dependahl, this court concluded that 28 U.S.C. § 1961 provides the proper measure for determining rates of both prejudgment and postjudgment interest. 653 F.2d at 1219.[9] It is undisputed under the circumstances of the present case that the rate of interest determined pursuant to § 1961 is 5.28% (the rate calculated by the district court for postjudgment interest). Accordingly, we affirm the award of prejudgment interest but modify the award so that the rate of prejudgment interest shall be 5.28% instead of 6%.

For the reasons stated, the rate of prejudgment interest is reduced from 6% to 5.28%, the judgment of the district court is affirmed as modified, and the award of attorney's fees is affirmed.

---

9. At the time Dependahl was decided, 28 U.S.C. § 1961 provided that "[s]uch interest shall be calculated from the date of entry of the judgment, at the rate allowed by State law." Dependahl v. Falstaff Brewing Corp., 653 F.2d 1208, 1219 (8th Cir.), cert. denied, 454 U.S. 968, 102 S.Ct. 512, 70 L.Ed.2d 384 (1981). Section 1961 currently provides:

Such interest shall be calculated from the date of the entry of the judgment, at a rate equal to the coupon issue yield equivalent (as determined by the Secretary of the Treasury) of the average accepted auction price for the last auction of fifty-two week United States Treasury bills settled immediately prior to the date of the judgment.