Stephen C. **LETARES**, Plaintiff,

v.

John **ASHCROFT**, Attorney General, and **Michael Garcia**, Commissioner, Immigration and Naturalization Service, Defendants.

No. 8:02 CV 607.

United States District Court, D. Nebraska.

Feb. 13, 2004.

Jill K. Harker, Harker Law Firm, Omaha, NE, for Plaintiff.

Ellyn Grant, Assistant United States Attorney, Omaha, NE, for Defendants.

## MEMORANDUM AND ORDER

BATAILLON, District Judge.

### INTRODUCTION

This matter is before the court on defendants' motion for summary judgment pur-

suant to Fed.R.Civ.P. 56. Filing No. 25. Plaintiff, a white male, has filed this action alleging that the defendants discriminated against him on the basis of race, gender and national origin, and in retaliation for protected activity in violation of 42 U.S.C. § 2000. Plaintiff requests compensatory damages, lost wages and benefits, and punitive damages. Defendants have also filed a motion to dismiss the request for punitive damages. Filing No. 21. The motion to dismiss is unopposed. I have carefully reviewed the record, briefs in support and in opposition, and the relevant case law, and I conclude that the motion for summary judgment should be granted.

## FACTS

Plaintiff is a white male of Greek descent. The Immigration and Naturalization Service (INS) in Omaha, Nebraska, employed plaintiff beginning July 1998, and during all material times in this lawsuit. He was hired as an immigration assistant with a salary of $25,966.00. Following a promotion in March 1999, he made $30,597.00. He became a special agent as a criminal investigator in July 1999, with an increase in salary to $38,230.60. Plaintiff received a promotion in September 1999, to the Supervisory Special Agent group (SSA) where he received supervision and training from SSA Wardy. Thereafter, in March 2000, during the time Agent Wardy supervised him, plaintiff again received a promotion and a salary increase to $44,630.40. In September 2000, he transferred to the Law Enforcement Service Center in Vermont where he again received a promotion. As of March 2002, his salary was $58,463.80.

## STANDARD OF REVIEW

On a motion for summary judgment, the question before the court is whether the record, when viewed in the light most favorable to the nonmoving party, shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(C); *Mansker v. TMG Life Ins. Co.*, 54 F.3d 1322, 1326 (8th Cir.1995). Where unresolved issues are primarily legal rather than factual, summary judgment is particularly appropriate. *Id.*

The burden of establishing the nonexistence of any genuine issue of material fact is on the moving party. Fed.R.Civ.P. 56(c); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). Therefore, if defendant does not meet its initial burden with respect to an issue, summary judgment must be denied notwithstanding the absence of opposing affidavits or other evidence. *Adickes*, 398 U.S. at 159–60, 90 S.Ct. 1598; *Cambee's Furniture, Inc. v. Doughboy Recreational Inc.*, 825 F.2d 167, 173 (8th Cir. 1987).

Once defendant meets its initial burden of showing there is no genuine issue of material fact, plaintiff may not rest upon the allegations of his or her pleadings but rather must set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists. *See* Fed.R.Civ.P. 56(e); *Chism v. W.R. Grace & Co.*, 158 F.3d 988, 990 (8th Cir.1998). The party opposing the motion must do more than simply show that there is some metaphysical doubt as to the material facts; he or she must show "there is sufficient evidence to support a jury verdict" in his or her favor. *Id.* Rule 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

■ Summary judgment should seldom be granted in discrimination cases. *Heaser v. Toro,* 247 F.3d 826, 829 (8th Cir.2001). In passing on a motion for summary judgment, it is not the court's role to decide the merits. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (on motion of summary judgment, the district court should not weigh evidence or attempt to determine truth of matter). The court must simply determine whether there exists a genuine dispute of material fact. *Bassett v. City of Minneapolis,* 211 F.3d 1097, 1107 (8th Cir. 2000).

## DISCUSSION

### A. Prima Facie Case

Plaintiff claims that he was discriminated against by Michael Wardy and Alonzo Martinez, his first and second line supervisors, during late 1999 and 2000. He also claims that retaliation occurred against him following his EEO filing, and he says he was constructively discharged from his position. Defendants contend that the plaintiff has failed to state a cause of action under the provisions of Title VII because he cannot establish any evidence of an intent to discriminate on the part of defendants under the familiar burden-shifting analysis of *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

■ A prima facie case of discrimination requires the plaintiff to establish that he 1) is a member of a protected class; 2) was qualified to perform his job; 3) suffered an adverse employment action; and 4) was treated differently than similarly situated people. *See Schoffstall v. Henderson,* 223 F.3d 818, 825 (8th Cir. 2000) (*citing Breeding v. Arthur J. Gallagher & Co.,* 164 F.3d 1151, 1156 (8th Cir. 1999)). If a plaintiff establishes a prima facie case, then the burden shifts to the employer to produce evidence of a legiti-

mate nondiscriminatory reason for its action. *St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 509, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). If the employer succeeds in this burden of production, then the burden shifts back to the plaintiff to prove that the employer's proffered reason was a pretext for intentional discrimination. *Reeves v. Sanderson Plumbing Prods.,* 530 U.S. 133, 143, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000). The ultimate burden of persuasion remains with the plaintiff throughout the case.

### 1. Adverse Employment Actions

■ For purposes of this motion, defendants concede that plaintiff is a white male of Greek descent and met the job expectations for his position. Defendants first argue that plaintiff suffered no adverse employment actions. There must be some significant change in employment status, such as hiring, firing, or a failure to promote, to establish such an adverse employment action. *Burlington Indust., Inc. v. Ellerth,* 524 U.S. 742, 761–62, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998); *Bradley v. Widnall,* 232 F.3d 626, 632 (8th Cir.2000). Plaintiff lists a number of acts which he considers evidence of discrimination. Generally, they involve lack of training opportunities and certain assignments, the absence of a commendation in his file, and a possible reprimand for not attending a mandatory training session.

■ First, plaintiff argues that he was denied training which would have been beneficial to promotion opportunities. Plaintiff contends that the denial of training, which occurred on several different occasions, impacted his future career prospects. *See Kerns v. Capital Graphics, Inc.,* 178 F.3d 1011, 1016 (8th Cir.1999). Training, argues plaintiff, is directly related to an agent's overall rating. However, it must be noted that plaintiff received an

outstanding evaluation, and more importantly, plaintiff does not point to a single instance where he was denied a promotion or a raise because of lack of training. Further, plaintiff received a 100 out of 100 on his OCOR rating, when he alleges is used for promotion purposes. Even assuming all of plaintiff's acts of alleged discrimination to be true, plaintiff still continued to receive promotions and pay raises. A court should not become a personnel department and determine what decisions management should make, so long as those decisions are not discriminatory in nature. *Ottman v. City of Independence*, 341 F.3d 751, 757–58 (8th Cir. 2003).

■ Second, a commendation letter, written by Director Mark Reed, was allegedly ripped up and placed in a trash can by Wardy, although Reed had directed that it be placed in plaintiff's file. Plaintiff argues that this shows discrimination against him.

Third, plaintiff also points out that Agent Trevino, an Hispanic female in his department, was in a car accident and did not receive a written reprimand, but plaintiff asked for assistance from a co-worker with office paperwork and a written letter went into his file. He contends this shows discrimination against him.

Fourth, plaintiff contends that he was asked by the Omaha Police Department to again assist with Project Impact, a project to halt gang and drug activity, but defendants denied plaintiff's request to continue working on the project. The Omaha Police Department personnel had allegedly called the INS and had given high praise to the plaintiff for his participation in the joint venture. The reason given by defendants for not allowing plaintiff to assist in this project was because of lack of experience. However, plaintiff claims that there is an agent who is now working on Project Impact who has less experience and whose name is Ovidio de la Fuestes.

The allegations made by the plaintiff do not constitute adverse employment actions. There is no showing that these actions affected his salary, promotions, or other significant terms of employment. On the contrary, he received numerous raises and promotions. I find that the plaintiff has not met his burden of establishing a prima face case of adverse employment actions. However, I will address each of his remaining arguments for the record.

### 2. *Similarly Situated*

■ Defendants next argue that plaintiff could not establish that he was treated differently than similarly situated employees. Plaintiff says that the discrimination occurred because he was white and of Greek descent. In May of 2000 SSA Wardy, who is Hispanic, supervised five different employees, including Kenney, Letares, Taylor, and Smith, who were white males, and Trevino, who was an Hispanic female. Plaintiff was a GS-9 and the others were GS-12's. Trevino and Letares entered duty at approximately the same time with SSA, but she had been with the agency since 1986. Plaintiff claims that Trevino received rental cars when she traveled on business, but the same right was not accorded to him. Further, plaintiff argues that Trevino had no investigative experience prior to 1999 and that both officers had the same office and supervisor. In spite of that, argues plaintiff, Trevino routinely received better training and work responsibilities, even though she had no criminal investigator training experience in 1999.

Defendant counters that plaintiff was in no way similarly situated to Trevino. Trevino joined the INS in 1986. She had worked with Border Patrol for more than ten years and had taught at the Border

Patrol Academy. Thus, she had more INS experience and had a higher grade classification, which had different standards than did Trevino's classification. Plaintiff's job description for a GS–9 is one page, while Trevino's description for a GS–12 is ten pages in length.

Plaintiff also appears to claim that an Agent Biesemeyer was similarly situated to him. However, the evidence submitted by the defendants shows that she had been with the INS for more than fifteen years, was a GS–12 and reported to a different supervisor. If the field is expanded to include all special agents in this time period, the number rises to twelve. All of these agents were GS 12's and had been employed by the INS for a longer period of time than had the plaintiff.

I find that the plaintiff has failed to establish that similarly situated employees were treated differently than he was treated as a result of any discriminatory behavior. Thus, plaintiff has failed in making his prima facie case in this regard.

### 3. Pretext

■ For purposes of this discussion, I will assume that plaintiff met his burden of proof and established a prima facie case and that defendants have articulated non-discriminatory reasons for their employment decisions. The burden of proof now shifts to the plaintiff. Defendants contend that they have legitimate reasons for all the employment decisions that concern the plaintiff. The work assignments were based on experience and office needs. Plaintiff's position, per the job description, required extensive supervision. No formal discipline was ever taken by the defendants. The move to Vermont helped place plaintiff closer to his son who lived in the Northeast.

Plaintiff has not presented sufficient evidence to establish pretext. Plaintiff must show that the reason for the decision was false and that discrimination was the real motivator. *Floyd v. State of Missouri Dept. of Soc. Serv.*, 188 F.3d 932, 936–38 (8th Cir.1999). Plaintiff argues that Trevino and he were treated differently, even though they were similarly situated. "Being treated in a condescending and patronizing manner" does not equate to the necessary adverse employment action that is required. *Cossette v. Minnesota Power & Light*, 188 F.3d 964, 971 (8th Cir.1999). Plaintiff received high evaluations, promotions and significant raises. I conclude that plaintiff has likewise not met his burden of showing pretext.

### B. Hostile Work Environment

■ Plaintiff has the burden of showing that the workplace is so permeated with discriminatory ridicule, insult, or intimidation that it created an abusive environment within which to work. *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993). Simple teasing or offhand comments do not rise to this level. *Clark Co. School Dist. v. Breeden*, 532 U.S. 268, 270–71, 121 S.Ct. 1508, 149 L.Ed.2d 509 (2001). Plaintiff also points to one disparaging remark, that he was called "an abrasive East Coast Greek," as evidence of discrimination based on his heritage. Wardy admits to calling Letares a "malcontent," although plaintiff states Wardy called him a "fucking malcontent."

Plaintiff argues that he had to leave his automobile at work, when previously he could take it home. He felt isolated because he was not Hispanic, although his deposition testimony makes clear that he got along with every agent in the office, with the exception of possibly the two Hispanic women in the office. Plaintiff argues that the comment about his heritage, the comment about him being a malcontent, the destruction of his letter of commenda-

tion, and that at one point he was tape-recorded by Wardy, are evidence of an abusive working environment. I find that these facts, taken as true, are not sufficient for a jury to find the existence of a hostile work environment.

## C. Constructive Discharge

■■■ Plaintiff transferred to Vermont in September 2000. He argues that he was constructively discharged. Defendants contend that plaintiff failed to file this claim with the EEO. Administrative remedies must be exhausted prior to bringing suit in federal district court. *Brown v. General Services Admin.,* 425 U.S. 820, 832, 96 S.Ct. 1961, 48 L.Ed.2d 402 (1976); *Edwards v. Dept. of Army,* 708 F.2d 1344, 1346 (8th Cir.1983). After reviewing the record, I agree that plaintiff does not allege constructive discharge in any direct manner in his EEO complaint. However, even if I could construe his claims to incorporate a constructive discharge allegation, plaintiff would be required to present evidence that the conditions were so intolerable that a reasonable person would not be able to remain in that employment. *Tidwell v. Meyer's Bakeries, Inc.,* 93 F.3d 490, 494 (8th Cir.1996), or show that the actions were of such a nature that they are designed to force the employee to quit. *Johnson v. Bunny Bread Co.,* 646 F.2d 1250, 1256 (8th Cir. 1981). Based on the evidence submitted to the court, the plaintiff has failed to present sufficient evidence in this regard. A jury could not conclude with this evidence that the working environment was so discriminatory as to be intolerable for the plaintiff.

## D. Retaliation

■■■ Plaintiff claims that he was retaliated against when he engaged in protected activity. The burden is on the plaintiff to show that he engaged in protected activity, that he received adverse employment action, and causation. *Man-*

*ning v. Metropolitan Life Ins. Co., Inc.,* 127 F.3d 686, 692 (8th Cir.1997). Plaintiff filed his EEO complaint on June 20, 2000. He contends that he was required to take extra work details, but defendants argue that these instances occurred prior to the EEO filing. He also complains that he received excessive scrutiny of his work and a denial of training opportunities. Defendants argue that these are not examples of adverse employment actions. Plaintiff also states that his employment evaluation was affected. However, the performance evaluation occurred in on May 11, 2000, a month or so before the filing of his EEO claim. In any event the overall performance rating for that time period was "Outstanding," the highest rating he could receive.

■■■ Plaintiff argues that six days after June 20, 2000, he was denied a task force detail involving Elian Gonzales. On August 14, 2000, he received a Memorandum of Counseling, and on August 22, he was denied Journeyman training. These, argue plaintiff, suggest retaliation. However, the loss of status or prestige, absent a change in salary, position or duties, does not constitute adverse employment action. *See Cossette,* 188 F.3d at 972.

In conclusion, I find that defendant's motion for summary judgment should be granted as a matter of law. There are no material facts that would permit the jury to find in favor of the plaintiff. Consequently, I shall grant the motion for summary judgment.

THEREFORE, IT IS ORDERED:

1. Defendants' motion for summary judgment, Filing No. 25, is granted.

2. Defendant's motion to dismiss, Filing No. 21, is denied as moot.

1100

3. A separate judgment in favor of the defendants shall be entered in accordance with this memorandum and order.